MARY NORTON, administratrix &c. of Thomas Norton, *vs.* E. WISWALL and J. P. WISWALL, ex'rs &c. of E. Wiswall.

A party who has from the public authorities a license to run a ferry, and has leased the same to another person, for a definite period, who is conducting the same independently of the lessor, by his own men and means, is not liable in damages for a death caused, during that period, by the wrongful act or negligence of a servant of the lessee.

THIS action was brought to recover damages, under the act of 1847, on account of a death caused by the wrongful act, neglect or default of the defendant's testator. (*Laws of* 1847, *ch.* 450.) The cause was tried at the Rensselaer circuit, in June 1856, before Mr. Justice GOULD and a jury, and a verdict was given for the plaintiff for $3000. The death occurred by the swamping or upsetting of a skiff boat on the 13th of October, 1854, on its passage across the side cut ferry from Troy to West Troy, rowed by a Canadian of the name of Yeppo or Yippo, who was in the employ of Robert Morrison, the latter being the lessee of Ebenezer Wiswall, of said ferry at a yearly rent, and the owner of the ferry house where the toll was taken, and of the boats and implements used in conveying passengers across the ferry, and having the entire direction, management and control of the ferry. On proof of these latter facts, the defendant's counsel moved for a nonsuit and dismissal of the complaint. The motion was denied, and the defendant excepted. The court held that the defendant was liable for the acts of the ferryman, and charged the jury that if the accident occurred through the negligence of the ferryman, unaccompanied with negligence on the part of the plaintiff's intestate, or his fellow passengers, the plaintiff was entitled to recover. The defendant excepted. The defendant's counsel requested the court to charge, that if the jury found that Morrison, the lessee, was executing an independent employment, and that Wiswall did not in any degree interfere with his business, either in the employment of the boatmen or in giving, or

assuming to give, any directions whatever, as to the running of the ferry, the defendant could not be charged with the negligence of Morrison's servant or agent, and the plaintiff ought not to recover. The court refused so to charge, and the counsel for the defendant excepted. The defendant also excepted to that part of the judge's charge which declared that passengers who are in danger in a ferryboat are excused for their conduct, though it may have contributed to the accident; unless it was plainly wrong, and that they are entitled to the benefit of any doubt on that subject; and also to that part of the charge which declared that if the rising of the passengers in the boat produced the accident, and they had reasonable cause for believing themselves in danger, they were not responsible for the exercise of great presence of mind, and that their activity, from fear, did not excuse the carrier.

The court having charged, in substance, that if an improper act on the part of the passengers concurred in producing the injurious result, the plaintiff could not recover, declined to vary the charge so as to state that the rash, imprudent or indiscreet conduct of any of the passengers, in rising from their seats and contributing to the accident, would bar a recovery by the plaintiff. To this refusal the defendant's counsel excepted. The court also declined further to vary the charge, on this point, so as to state that the plaintiff could not recover unless she showed that the plaintiff's intestate was wholly free from fault, and that thus the injury was wholly caused by the carelessness or negligence of the defendant. To this refusal, also, the defendant's counsel excepted. The defendant also excepted to the admission of evidence tending to show that the overseer of the poor was called upon to assist the plaintiff in the winter succeeding the accident, and found her and her family very needy, and rendered them assistance.

The defendant moved the court for a new trial, upon the judge's minutes, which motion was denied, and judgment en-

tered for the plaintiff. The defendant made a case and exceptions and appealed from said judgment, to the general term of the court.

*David L. Seymour*, for the appellants.

*Daniel Gardner*, for the respondent.

HOGEBOOM, J. This case presents, distinctly, the specific question whether a party who had from the public authorities a license to run a ferry, and had *leased* the same to another party for a definite period, who was conducting the same independently of the lessor, by his own men and means, is liable for a death caused during that period, by the wrongful act or negligence of a servant of the lessee. I think the principle is well settled on authority, that he is not so liable; but as the contrary is strenuously maintained by the learned counsel for the plaintiff, and as the principle itself is of large application, and must control a considerable number of suits growing out of the occurrence in question in this case, it may be well to re-state some of the reasons upon which it rests.

I am not able to see how any person can be made responsible for a particular transaction, or the consequences flowing from it, unless he has been in some way personally engaged in it, or instrumental in bringing it about, or the relation between him and the person who inflicts the injury complained of, be that of partner, or master and servant, or some other involving the principle of agency.

Where one is the master or principal of another, he is responsible for his acts, within the scope of his employment, because he has conferred authority upon the latter to do the act, and because he has the power and the legal right to control his conduct. Where one is the partner of another, he is liable for his acts within the scope of the partnership, because he has agreed to be so, and because the very nature and object

Norton *v.* Wiswall.

of this relation imply that each acts with the authority and assent of the other. But where the parties stand towards each other simply in the light of contracting parties, having no relation towards each other which draws into operation the principle of agency, the rule does not apply. Such is the condition of lessor and lessee. The lessee, for the time being, takes the place and assumes the duties and obligations of the lessor. He is a substitute for the lessor. He acts independently of him. He cannot be controlled by him. He has an agreement under which, in consideration of a stipulated compensation, he is, for the time being, clothed with the rights and responsibilities of the lessor. The lessee of a house or a farm is, during the continuance of the lease, owner—at least *quasi* owner. He has the rights of owner. The lessor cannot, without his consent, set foot upon the premises. The lessee of a ferry has similar and equal rights. By the very terms and legal effect of the lease the lessor is displaced from the possession and temporary ownership of the ferry. He cannot run it. He cannot control it. He cannot give directions in regard to it. He has no more rights in regard to it than a third person. To attempt to take possession or to exercise control, or to give directions, would be to make him an usurper, an intruder—a trespasser. How then can he be liable for the acts of the lessee? The servants of the lessee are not his servants. He cannot control them. He cannot give them orders which they are bound to obey. They owe no allegiance or service to him. Having no power over them, and having conferred no authority upon them, he is not responsible for their acts. He stands in no relation to them which makes applicable to him the maxim *respondeat superior*.

The application of these principles, under the adjudged cases, is generally not difficult, when the facts are undisputed. Thus, in *Blake* v. *Ferris*, (1 *Selden,* 48,) the defendant had a license from the common council of New York, to put down a sewer in one of the public streets, and which required him, in order to protect the citizens from danger, to keep up

proper barriers and lights in the neighborhood of the excava-
tion, and made him responsible for the damages which might
result from the making of the improvement, by a neglect of
any of the necessary precautions, and Ferris, instead of pros-
ecuting the work himself, contracted with one Gibbons to do
it, for a stipulated price, and it was done by the latter.
During its prosecution, an injury occurred to the carriage and
horses of the plaintiff, by their being driven into the excava-
tion thus made; and for this injury the action was brought.
But although there was a recovery, with the sanction of the
supreme court, it was reversed in the court of appeals, and a
lengthy opinion pronounced, in which this whole doctrine is
elaborately discussed and deliberately settled. The court dis-
tinctly held that Gibbons, and not Ferris, was the party liable,
and that the servants of Gibbons were not the servants of Fer-
ris, within the meaning of the rule *respondeat superior*. The
decision is worthy of particular consideration, because, within
the principle of some other adjudged cases, it might with
much plausibility be contended, that inasmuch as the build-
ing of sewers and the duty of taking all proper precautions
against accidents, were obligations resting upon the municipal
authorities of New York, as public officers, imposed by law,
and which they could not evade or shift upon others, they
themselves should be regarded as the parties really liable; and
inasmuch as they had substituted in their place the defend-
ant, and expressly imposed upon him, by the terms of the
written license, the same obligations and responsibilities which
rested upon them, he should not be permitted to shift them
upon another person. Nevertheless, the court of appeals em-
phatically hold that Gibbons being the actual contractor, and
conducting the work by his own servants and means, for a
stipulated price, to be paid him by Ferris, the latter was nei-
ther in a situation to interfere with, nor to be responsible for,
the acts of the latter, so far as third persons were concerned.
The principle of that case, unless it has been in some way

modified or overruled, is directly applicable to the case at bar, and decisive of the result.

Nor do I perceive any solid distinction in principle between this case and that of *Heimstreet* v. *Howland*, (5 *Denio*, 68.) That was, like this, an action on the case, for negligence alleged to have been committed by the ferryman of the defendant, by which a span of horses belonging to the plaintiff was drowned. There, as here, the defendant was the original lessee of the ferry. There, as here, he had leased the same to a third person, and the servant of the latter was guilty of the negligence. The question turned, it is true, upon the point whether the nature of the arrangement as to the ferriage, between the defendant and his lessee, did not constitute them partners, and the court held it did not, and therefore granted a new trial, reversing the decision made at the circuit. But if the ground which the plaintiff here takes was tenable, it would have been decisive of the case there. It is true, it does not seem to have been discussed, but it was necessarily involved in the case, and would have been fatal to the defendant, independent of the question of partnership.

The same principle was involved in the case of *Pack* v. *The Mayor &c. of New York*, (4 *Selden*, 222.) The defendants had made with one Foster a contract for grading and keeping in repair the Bloomingdale road, and Foster's servant in executing the work had blasted rocks, pieces of which were in consequence thrown into the second story of the plaintiff's house, injuring his property, and his wife and children, for which injury the action was brought. It was held that the contractor was not, in respect to liability for such an injury, the servant or agent of the corporation, and accordingly the court of appeals reversed the judgment of the court of common pleas of New York, allowing a recovery in such a case.

The principle was again enunciated in *Kelly* v. *The Mayor of New York*, (1 *Kernan*, 432,) where it was held that the corporation of the city of New York, which had ordered a street to be graded and had contracted with a person to do the

Norton *v.* Wiswall.

grading, was not liable for an injury to the plaintiff's horse, alleged to have been caused by the negligence, in the blasting of rocks, of the workmen employed by the contractor in performing the work; even though the contract contained a clause that the whole work should be done under the direction and to the entire satisfaction of certain of the officers of the corporation.

There is a class of cases where the original party is held liable, upon a different principle. Such is the case of *Bailey and others* v. *The Mayor &c. of New York*, (3 *Hill*, 531, 2 *Denio*, 433.) The action was brought for injuries to the plaintiff's lands and property, occasioned by the negligent construction of a dam upon property owned by the defendants, erected in the process of carrying the water of the Croton river to the city of New York, which was authorized by an act of the legislature for the purpose of supplying the city of New York with pure and wholesome water. The general superintendence and conduct of the work had been confided to certain water commissioners appointed by an act of the legislature, and they had contracted with other parties to build the particular dam in question, which parties by themselves and their servants had accordingly done the work. But the act of the legislature which originally authorized the work and appointed the water commissioners, had under a provision of the act itself, been submitted to the suffrages of the electors of the city for their approval and been approved by them; and this, it was held, was an adoption of the water commissioners as the agents of the city; and the work, when completed under the direction of the water commissioners, had been submitted to the common council of New York for approval and had been approved by them; and this, it was held, was an adoption of the work itself. The question however remained, whether the defendants were liable notwithstanding the injury happened by the negligent execution of the work by the contractors and their servants. And it was held, though with considerable hesitation and after a severe conflict, and

Norton *v.* Wiswall.

against an able dissenting opinion of Lieutenant Governor Gardiner in the court for the correction of errors, that they were so liable. And it was put mainly upon the ground that the defendants were the owners of the property upon which the dam that occasioned the injury was built, and that the dam was itself a nuisance, and that the defendants by sustaining and continuing the nuisance were in effect the authors of the injury ; and that it was an incidental obligation attached to the ownership of real estate that it should not be made the instrument of damage to others.

To the same class belongs the case of *Congreve* v. *Morgan*, (5 *Duer*, 495.) That was a special action on the case for an injury happening to the plaintiff by his being precipitated into a vault under a side walk in the city of New York, in consequence of a defective flag stone used as a cover to the vault or area beneath. The action was against the owner of the adjoining premises, for whose benefit the vault was constructed by a contractor employed for that purpose. The plaintiff had a verdict, which was sustained on a review at general term. The decision was put upon three grounds: 1. That the erection of the vault was *unlawful* without the permission of the municipal authority. 2. That being constructed and maintained for the benefit of the adjacent real estate and its owner, it was incumbent upon him to keep it in proper condition and repair. 3. That having been delivered over by the contractor to the owner, and accepted and approved by him, the acceptance and continuance thereof by him must of necessity make him responsible for all injuries sustained during the period that he was in the possession and enjoyment of it. (*See also, as to the last point, Mayor of Albany* v. *Cunliff*, 2 *Comst.* 174.) So also in *Ellis* v. *The Sheffield Gas Consuming Company*, (22 *Eng. L. and Eq. Rep.* 198,) the defendants were held liable for an injury happening to the plaintiff by his falling over a heap of stones and dirt collected in digging a trench on a public street, notwithstanding the excavation was made by persons contracting with the defendants to do the work. And the de-

cision was put upon the ground that the act of digging up the
streets was in itself an unlawful and unjustifiable act, and.
that the defendants, in employing a contractor to perform an
act thus unlawful, were necessarily responsible, as they must
be held to have directly authorized the excavation which re-
sulted in the injury to the plaintiff.

The decision in *Congreve* v. *Morgan* may be successfully
defended, also, by the reasoning that governed the court in
*Dygert* v. *Schenck*, (23 *Wend.* 446,) where the defendant for
his own convenience had built a raceway for the passage of
water across the public highway, and had covered it with a
bridge, which, after the lapse of ten years, becoming out of re-
pair, the plaintiff's horse fell through and was injured. The
action was sustained, the court regarding the building of the
raceway as not only unauthorized but essentially a nuisance,
and being maintained solely for the defendant's accommoda-
tion, and against the public rights and interests, he was bound
to see to it that it was kept in perfect repair, or be responsible
for the consequences.

The case of *Nelson* v. *The Vermont and Canada Rail Road
Company*, (26 *Verm. Rep.* 717,) on which the plaintiffs' coun-
sel relies as decisive of the present case, stands upon a different
principle. It is this. Where the injury occurs from the non-
performance of a duty which the law imposes, and is directly
traceable to that cause, there the party is liable notwithstand-
ing subsequent parties or lessees taking his place may have
been guilty of a like delinquency. In the case referred to,
the injury occurred from the omission to make and maintain
fences along the line of the rail road, the making and main-
tenance of which were made obligatory upon the defendants
by their charter, the statute law of the state. The court
properly held that notwithstanding the defendants had leased
their road, and it was actually operated by other parties, the
defendants were liable for an injury which resulted from their
omission to comply with a duty imposed by the very terms of
their charter, and which was none the less obligatory on ac-

count of the lapse of time during which their delinquency had been continued.

The case of *Hutson and wife* v. *The Mayor &c. of New York*, (5 *Selden*, 163,) rested upon a like reason. An injury happened to the plaintiff's wife from driving into an excavation made under the permission and authority of the defendants, by the Harlem Rail Road Company, in one of the New York avenues, for the convenience and accommodation of their road. The plaintiffs recovered, upon the ground that the superintendence and repair of the public streets and avenues of the city were duties imposed upon the defendants by law, for executing which they were provided with ample means, and from which they could not discharge themselves by any arrangement with other persons.

So also where an act is forbidden by statute and originally unlawful, and the injury complained of can be said to be a direct, natural and necessary consequence of the unlawful act, the party doing that act must be held responsible. It was upon that principle that the case of *Thomas* v. *Winchester*, (2 *Selden*, 397,) was decided by our court of appeals, in which the defendant, who had by mistake put a false label upon a box of medicine, in consequence of which an active poison was sold for a harmless article, was held liable, notwithstanding the medicine had gone through several intervening hands before it reached the plaintiff; and notwithstanding the defendant had not sold it with any view of its being administered to the particular party who actually suffered from its poisonous qualities.

From this review of the leading cases it will be seen that none of them, with perhaps a single exception, rest on grounds which will sustain the plaintiff's recovery. Some of them point prominently to the fact that the act originally done or authorized was *illegal;* and doubtless where this is so, and the injury complained of can be deduced as a direct and necessary consequence from such an act, the original party should be held liable. Such are the cases of *Dygert* v. *Schenck, Congreve* v. *Morgan, Hutson* v. *The Mayor &c. of New York,*

*Nelson* v. *The Vermont and Canada Rail Road Company,* and *Thomas* v. *Winchester,* above referred to. And yet all those cases are plainly distinguishable from the case at bar, even if we assume that the lease from Wiswall to Morrison was an unauthorized or illegal assignment. The distinction consists in this: that the negligence of Morrison's servant is not a direct and natural consequence flowing from the lease of Wiswall to Morrison, because it must be assumed that either by the express terms of that lease, or by legal implication, it was made the duty of Morrison to provide proper boats and skillful men, and to transport passengers with all necessary skill and care. The case of *Ellis* v. *The Sheffield Gas Consuming Company* seems to go farther than any of the other cases above referred to, and to hold that where the act—for example, the excavation in the street for the purpose of laying down gas pipes—was unlawful in itself, then an injury which arose from a heap of dirt thrown out by the excavation would make the gas company liable notwithstanding the work was done through a *contractor* employed by them, and the injury occurred by the *negligence* of the contractor's servants. That case is not quite analogous to the present, even if we assume the lease to be unlawful, because in the English case the entire proceeding was illegal, whereas in this case Wiswall had the right of ferriage and the right to employ Morrison to conduct it as his servant; and the illegality, if any, was in undertaking to invest him with his rights by lease or assignment.

But the English case above referred to seems to be in conflict with the American cases, and, I think, with the spirit of the cases in our own state. Two of them are referred to in the able opinion of Mr. Justice Harris in the parallel case of *Blackwell* v. *Wiswall,* arising out of the same transaction, where the question was presented on demurrer    These are the cases of *Ladd* v. *Chotard,* (1 *Alab. Rep.* 366,) and *Felton* v. *Dean,* (22 *Verm. Rep.* 170,) where the defendant who had a ferry license, receiving the same under similar restrictions to those imposed by our own laws, having *rented* the same to

Norton *v.* Wiswall.

another party, by the negligence of whose servant the injury occurred, was held not to be liable in a suit by the aggrieved party. These cases are nearly or quite parallel to the present. To these may be added the case of *Bowyer* v. *Anderson*, (2 *Leigh's Va. Rep.* 550,) which was similar to the last two cases above cited, except that the defendant's agreement with a third party left it equivocal whether it was a partnership or a transfer for the time being of the absolute interest of the defendant as the licensee of the ferry. This was, as in the case of *Heimstreet* v. *Howland*, (5 *Denio*, 48,) the only question discussed; it never having, seemingly, occurred to either counsel to take the ground that the original party was liable whether he had assigned or leased his interest or not.

The weight of authority seems decidedly against the plaintiff's right to maintain the action against the present defendants. I think it therefore unnecessary to discuss the question whether the lease or renting by Wiswall to Morrison was an unlawful and ineffectual attempt to vest in the latter rights which were confided to Wiswall as a personal trust and confidence, and in their nature not assignable. I incline to the opinion of Mr. Justice Harris on that point; but I concur with him also in the conclusion that assuming such to be the fact, it cannot make the servant of Morrison whom he had no right to direct or control, in whose selection he had no agency, and of whose conduct he had no knowledge, his servant in the sense which should make him liable for the consequences of his wrongful and negligent acts, under the rule *respondeat superior*.

The decision of this question against the plaintiff makes it unnecessary to examine the other questions made at the trial.

The judgment should be reversed and a new trial granted, with costs to abide the event.

WRIGHT, J., concurred.     GOULD, J., dissented.

Judgment reversed.

[ALBANY GENERAL TERM, March 1, 1858. *Wright, Gould* and *Hogeboom*, Justices.]