Wright, J.
The petition and demurrer involve questions relating to the liability of landlord and tenant, lessor and lessee, where a third person has been injured in consequence of some defect in condition of the premises. Moon was the owner of certain property in the village of Defiance, which he had leased to Brooks, who was in possession of and using the same for a post-office. A pipe or gutter attached to the building had become obstructed or stopped up, and the water, instead of running through it, flowed over the roof. This water, falling upon the steps of the post-office, in winter, ice was formed. Coming from the post-office, plaintiff stepped upon this ice, fell, and was hurt. Moon, the landlord, and Brooks, the tenant, were both sued. Brooks was dismissed from the action, and the question to be decided is, is Moon, the landlord, liable upon the statements made in the petition ?
The liabilities arising from the relation of landlord and tenant are these: Liability generally accompanies occupation, and when a landlord leases and parts with the possession, his liabilities are in certain instances devolved upon the tenant.
The principle which runs through cases, determining the responsibility of the one or the other, maybe thus defined r Whoever had control of the premises at the time the cause of injury originated, that person is liable in damages which simply means that the party in fault must respond.
Hence it is that where, at the time of tbe lease, the property is in a ruinous or defective condition, and by reason thereof the injury happens, then the owner or lessee is liable *268 generally, though there are cases which make this liability dependent upon the covenants of the lease. And, upon the other hand, when this defective condition arose after the lease, then the tenant is responsible, with, perhaps, exceptions upon covenants. And when there has been a nuisance of continued existence, lessor and lessee may both be liable for damages resulting therefrom. The lessee in actual possession of the premises, if he continues the nuisance after notice of its existence, and notice to abate it; the lessor, if he at first created it and demised the premises with the nuisance upon them, and at the time of the damage done is receiving a benefit therefrom by way of rent or ■otherwise.
In Roswell v. Price, 12 Mod. 685, it is held that if an owner erect a nuisance, for which damages are recovered, and the nuisance is continued in the hands of his lessee, an .action for the continuance of it may be against either. Here the nuisance or original trouble was occasioned by the owner, and he is held responsible, even after the lease. The court say that both may be liable, the landlord for originating, and the tenant for continuing. It is said, in the case, that the erecter of the nuisance can not discharge himself by assigning over, and more especially when he grants over, reserving rent, by which he continues the nuisance, having a recompense for it in such rent.
This case illustrates the idea that control is the criterion of responsibility, for control means that power which occasions and which can prevent. The nuisance was erected, that is, originated, by the owner, who manifestly should, therefore, be responsible for its consequences.
But it will be observed that not only the owner, but the tenant also, is held liable, upon the ground that every continuance of a nuisance is a fresh nuisance. Taylor Land. & Ten., § 175; Vedder v. Vedder, 1 Den. 257; Little Miami R. R. Co. v. Comm’rs Greene Co., 31 Ohio St. 338. This fresh nuisance the tenant might abate, if he saw fit, being in control of the premises, and, for failure in this, h e is responsible.
*269 In Todel v. Might, 9 Com. B. (N. S.), 377 (C. J. Scott, N. S.), there was a demurrer to a declaration. Defendant leased to a tenant a lot, on which stood a stack of old chimneys in a ruinous and dangerous condition at the time of the lease, and defendant knew it and so maintained them. The chimneys fell on plaintiff’s house, and defendant was held liable in the declaration.
Earle, J., says, p. 390 : “ It is alleged that the defendant let the houses when the chimneys were known by him to-be ruinous and in danger of falling, and that he kept and maintained them in that state, and thus he was guilty of the wrongful non-repair which led to the damage, and after-the demise the fall appears to have arisen from no fault of the lessee, but by the laws of nature.”
The owner of premises who leases them when they are-in such want of repair or bad condition as to be a nuisance, or when, from the ordinary course of events, they must become so, and receives rent for their use, is liable to a third person for injury happening in consequence of this defective condition or nuisance. In such case the landlord had the control of the property at the time the trouble was occasioned, and he might have removed it.
It is the party who does the wrong who should be made-responsible for the consequences it entails.
But if the nuisance arises solely from the act of the tenant, the landlord can not be held. Owing v. Jones, 9 Md. 108; Staple v. Spring, 10 Mass. 79; Waggoner v. Jermain, 3 Denio, 306; Fish v. Dodge, 4 Denio, 311; House v. Metcalf, 27 Conn. 632; Smith v. Elliot, 9 Barr, 345.
Rich v. Basterfield, 4 Com. B. 783, was a ease much discussed and decided for plaintiff at nisi prius, but unanimously reversed in full court. ' The owner of a house-standing back from the street built a low shop between his house and the street, with a chimney, and rented out the shop. The tenant used the chimney for a fire, and when the wind was from the east or southeast smoke was blown into the plaintiff’s windows, causing him great annoyance. Defendant, the owner, was sued on the ground that he *270 ■built tbe chimney, which made the nuisance, and was an.swerable for the ordinary use of it.
The court held that the chimney itself was not a nuisance, but it was the fire made by the tenant; that coke might have been used, or he might have abstained from having a fire when the wind was in the wrong direction, and the •owner therefore was not liable. He had no control of the fire.
Upon the other hand, in House v. Metcalf, 27 Conn. 632, an owner had leased a mill situate so near the highway that 'its revolving wheel frightened horses. The owner was held responsible, although it would seem that not the mill itself, but its operations in the hands of the tenant, occasioned the difficulty.
Gandy v. Jubber, 5 Best & Smith, 485: A grate over the sidewalk, long there, had the bars so wide apart that a woman slipped her foot through and lamed herself. The premises were rented at the time from year to year, and the landlord, the heir of the original owner and builder, was held liable, on the ground that the grate was a nuisance in its original construction. Declaration avers that the tenant “ was not under obligation to alter, repair, and keep 'in repair,” and that it had been many years so that one might fall through. The jury found that the grate was a nuisance, “ both from the faultiness of its construction and from want of repair. Crompton, J., says: “ It must be a nuisance in its very nature and essence at .the time of the letting, and not merely something which is capable of thereafter being rendered a nuisance by the tenant.” Blackburn says : “ The nuisance must be a normal one.”
This case was reversed in the Exchequer, 9 Best & Smith, 15. It is, however, there said that “ to bring liability home to the owner, the premises being let, the nuisance must be one which was in its very nature and essence a nuisance- at the time of the letting, and not something which was capable of being thereafter rendered a nuisance by the tenant, and that it is a sound principle of law that the owner of . property, receiving rent, should be-liable for a nuisance ex *271 isting in his premises at the date of the demiseand the judgment of the Queen’s Bench is reversed on the ground that “ it is not averred, either directly or by any reasonable inference, that the grating was defective at the time of the letting.”
Wharton on Neg., § 817, says : “An owner, being out of possession, and not bound to repair, is not liable in this •action for injuries in consequence of his neglect to repair. But where the nuisance existed when the property was leased to the tenant, the landlord may be held liable. So the tenant is liable for the nuisance thus retained by him, even though the nuisance was on the premises when leased to him. And both the landlord and tenant, under the circumstances, are jointly and severally liable for the continuance of the nuisance, supposing the nuisance to be on the property when leased, or to be put there with the landlord’s •connivance.”
The City of Lowell v. Spaulding, 4 Cush. 277, was a case for damage to plaintiff by falling into a space left open in the sidewalk, where it was held that the occupant, and not the landlord, is bound, as between himself and the public, so far to k^ep the buildings in repair that they will be safe for the public, and such occupant is, prima facie, liable to third persons for damages arising from any defect. If there is an express contract that the landlord shall repair, suit will be sustained against him to avoid circuity of action.
The occupier is, prima facie, liable, and the owner is not, merely as owner, without fault on his part. Russell v. Shenton, 48 E. C. L. R. 449.
There is another large class of cases that would seem to be not entirely in accordance with the view that has been advanced, though perhaps the difference is more in appearance than reality. They are eases where the liability is devolved in accordance with the covenants of the lease and made to accompany the duties it imposes. If the defect existed prior to the lease, and by its provisions, the tenant assumes the responsibility of keeping the premises in repair, it has. been held that the landlord was not responsible.
*272 In the early ease of Payne v. Rogers, 2 H. Blk. 350, the head note is: “If the owner of a house is bound to repair it, he, and not the occupier, is liable to an action in the case for an injury sustained by a stranger from a want of repairs.”
This was an action against the owner of a house, in the occupation of a tenant. It does not seem to have been made a point in the case, whether the defect arose-before or after the demise, a question, important, as we have seen, in cases not involving the element of covenants in the lease. The case is made wholly to turn upon the agreement, as to repairs, between the landlord and tenant. And the landlord, having bound himself to the tenant to repair, is made liable for the injury. Although nothing is said in the case about who had the control of the premises,, and though the facts do not show in whom that control Avas, when the defect occasioning the injury originated, still it may be perhaps fairly said, that by binding himself to repair, the owner retained such control as would enable him to make those repairs. This view is sustained by the ■ language of the court in Burdick v. Cheadle, 26 Ohio St. “ But in case a landlord undertakes with his tenant to keep the premises in repair, having thus reserved the control to the extent necessary for making repairs, his duty to the public in relation to the property is not affected by the lease, and he remains responsible, under the doctrine of the above maxim (sic utere, etc.), for defects arising from the want of repairs during the continuance of the lease.”
In the case of Pretty v. Bickmore, L. R. 8 C. P. 401, the tenant had covenanted to repair. The premises were dangerous at the time of the demise. But it was held that the landlord was not liable, because of the tenant’s covenant. This case is disapproved of in Swords v. Edgar, although it is followed up by the case of Gwinnell v. Eamer, L. R. 10 C. P. 658. See also Leonard v. Storer, 115 Mass. 86; Shipley v. Fifty Associates, 106 Mass. 194; S. C. 101 Mass. 251; Shearman & Red. on Neg. §§ 501, 502; Whalen v. Gloucester, 11 Hun. 24 and 99; Nelson v. Liverpool, etc., Co., High Ct. Just. *273 Com. Pl. Div. (Eng.) C. L. J. Oct. 5, p. 312. It is not,, however, necessary, nor do we undertake to decide as to-any of the rights or liabilities which subsist by reason of the covenants of leases. What the terms of the letting in this case are, we have no means of knowing, nor are we-advised whether the landlord or tenant undertook to repair. The remarks made apply only to such cases as involve no consideration of the agreement by which the demise was made, other than the mere fact of its existence.
The lessor is not liable to a stranger for an injury arising' out of the property being out of repair, unless under special circumstances, such as a covenant with the lessee to-make the repairs. Bears v. Ambler, 9 Barr. 153.
If the owner, as’distinct from the occupier, is sued for', damages, arising from a falling wall, a special ground of liability must be averred, other than mere ownership. The-public looks to the occupier, not to the estate. Ghauntler v. Robison, 4 Exch. 163.
“ Where property is demised, and at the time of the demise is not a nuisance, and becomes so only by the act of the tenant, while in his possession, and injury happens during such possession, the owner is not liable.”
But where the owner leases premises which are a nuisance, or must, in the nature of things, become so by their uses, and receives rent, then, 'whether in or out of possession, he is liable for injuries resulting from such “nuisance.” Owings v. Jones, 9 Md. 108; Fish v. Dodge, 4 Denio, 311 Hadley v. Taylor, L. R. 1 C. P. 53; Fisk v. Framingham Mem. Co., 14 Pick, 491; Cheetham v. Hampson, 4 T. R. 318; Norton v. Wiswell, 26 Barb. 618.
A well-considered case upon this subject is found in 59 N. Y. 28, Swords v. Fdgar. Defendants were owners of a pier, which was under lease. A laborer engaged in discharging the cargo of a steamer, was injured by reason of the pier falling, through rottenness of its timbers. The defect existed at the time the lease was made. It is held that'ordinarily it is the duty of the occupant to see that the- *274 premises are secure, but where they are leased, and at the time of the demise and delivery of possession to the lessee, they are in a defective and unsafe condition, and, in ■consequence, thereafter, while in possession of the lessee, .an injury happens, the lessor, who is receiving a benefit by way of rent or otherwise is liable. And the owner or lessor was held responsible.
In this case, as in many others that might be cited, we •find the same principle, and it is thus stated in Fisher v. Thirkell, 21 Mich. 1 : “A party will not be liable for an injury occasioned by a nuisance, on the ground of his possession of the premises, where the nuisance is shown to exist, unless his possession be such as to give him the legal control of the premises.”
This was the case of a person injured by falling through •a coal-hole in the sidewalk, and the question was whether the landlord or tenant was liable.
When a landlord has leased premises, he parts with control of them; with possession that control passes to the tenant, and if defect arises, or want of repair, or the premises are allowed to get into such a condition as that they become dangerous during the demise, it is the duty of the tenant to take such steps as will prevent injury. The liability arising from the control of premises, is illustrated in that large class of cases where contractors build houses. If the premises are completely given up to the contractor, he will be responsible to one injured during the progress of the work. If, on the other hand, the owner retains supervision, and the building goes on under his direction, as he is in control of the premises, his responsibility continues; the contractor or builder then stands, to him, in the relation of servant. And there are many nice cases as to whether the party is an independent contractor or servant merely.
It is, however, not necessary to enter into this discussion. 'The principle of control and its accompanying liability is sufficiently illustrated in City of Cincinnati v. Stone, 5 Ohio St. 38.
*275 The city contracted with B. to grade a street, and in doing which he blocked the water, so that it floAved over Stone’s ground, doing damage. The city was held liable on the ground that, by the contract, she reserved the right to direct the manner of doing the Avork. The syllabus says when the employer retains control and direction of the woi’k, and injury happens, he will be responsible. Clark v. Fry, 8 Ohio St. 358; Gwathmey v. L. M. R. R. Co., 12 Ohio St. 92.
The principle suggested is recognized in Burdick v. Cheadle, 26 Ohio St. 393. In that case, the person injured was in the store, upon the invitation of the tenant, or as a customer, and Avas not a stranger, maintaining his rights as one of the public. It is held that if one invites another into danger and hurt, the sufferer must seek his remedy against the party inviting him. That he can not maintain an action against another, must be apparent from the fact that if he had hot accepted the invitation he would not have been injured. In Burdick v. Cheadle, the court, in discussing the maxim, “ sic utere,” etc., observes : “ The principle ordinarily applies only to persons in possession and having control of the property, either as owners or tenants.”
The rule, therefore, deducible from the authorities, and which is applicable to the case in hand, is this : A landlord, who is out of possession of the premises, by virtue of a demise, and who has no control over them ; who would not have the right to enter therein, even to make repairs, without his tenant’s consent, is not liable for accidents occasioned by the fact that the property is temporarily out of repair.
If the defect is inherent in the original construction, and this occasions the injury, then the landlord or lessor is responsible ; but when the defect arises after the lease, then the tenant is responsible.
Examining the amended petition, therefore, we find this alleged : Moon was the owner, and Brooks the lessee and possessed of the premises, using and keeping them as a ,post-office. It is then averred that the water-pipe or gutter *276 became filled and obstructed, and the water fell from the-roof upon the steps leading from the post-office to the sidewalk. This froze, and the plaintiff slipped on the steps and fell. The cause of the injury is the stopping up of the pipe. It is not alleged that there was a fault in its original construction, but it would appear to be one of those obstructions that may occur at any moment. It is not averred that this obstruction existed before the demise was-made, and such an averment is necessary before the landlord can be held. If it occurred after the demise, it is the duty of the tenant, or occupier, to see that such obstruction was removed. The petition, therefore, lacks the necessary averments to show that the landlord is liable, as it does not show a defect while the premises were in his control before he leased, and for which alone he is responsible. All facts necessary to raise a legal liability must be strictly averred. Metcalfe v. Heatherington, 11 Exch. 257.
And, again, it was the ice that occasioned the accident. It is not averred that it was the duty of the landlord to remove this ice, nor does it appear that he had such control of the premises, as called upon him to do it. If this ice-was a nuisance to the passing public, endangering their lives- and limbs, it was a nuisance arising during the continuance, of the lease. It was a thing temporary in its nature, a defective condition of things, such as the tenant was called-upon to remedy, and not the landlord, as between landlord- and tenant.

Judgment affirmed.