## CRUSSELLE *vs.* PUGH.

1. The existence of fraud is a question of fact, and if there be testimony tending to show it, the question should be left to the jury.

2. If counsel for the plaintiff made a concession of fact-favorable to the defendant, and the court stated to the jury that the fact had been conceded by plaintiff's counsel, it was no ground for new trial at the instance of the defendant.

3. A master is generally not liable to one employè for injuries resulting from the negligence of a co-employè. He may become liable if he fails to use ordinary diligence in employing competent servants, or retains an incompetent servant after knowledge of his incompetency, and damage results therefrom.

4. A lessor is not liable to a servant of the lessee for damages resulting from the negligence of the latter, unless some duty remained upon the lessor from a failure to perform which the injury arose.

(*a.*) It would make no difference that the servant injured was originally employed before the lease by the lessor, was ignorant of the lease, and supposed that he was still so employed.

Non-suit. Charge of Court. Master and Servant. Damages. Before Judge CLARK. City Court of Atlanta. December Term, 1880.

Reported in the decision.

ARNOLD & ARNOLD, for plaintiffs in error.

MILLEDGE & HAYGOOD, for defendant.

SPEER, Justice.

Pugh sued Crusselle in the city court of Atlanta for damages to the amount of three thousand dollars. He alleged that in April, 1871, he was employed by Crusselle in the capacity of a "striker" for one Gatewood, a blaster, who was also in the employment of Crusselle. That on 19th of April, 1871, by reason of the careless and unskillful manner in which said blaster prepared the drill, the charge of powder exploded prematurely, by reason of which the eyes of the petitioner were so injured as to cause him great pain, and finally to deprive him of his eyesight. He further alleged, as part compensation for the loss and injury done the petitioner he, the defendant, authorized petitioner to buy of one Dill a certain house and lot at the price of two hundred dollars, which he promised to pay for and convey by deed to petitioner. That said lot was purchased, and in August, 1872, petitioner moved into it with his family under the belief that the defendant had the title made to petitioner. That sometime after that, petitioner learning the deed had not been so made, he saw the defendant, and he to allay the fears of petitioner promised he should have the house and lot during his life. But, notwithstanding such promise, defendant had, in May, 1880, ejected petitioner from the place thus given as part compensation for the damage done him in the loss of his eyesight, etc.

Subsequently plaintiff amended his writ, alleging that defendant, Crusselle, constituted Gatewood as his agent in his stead to take charge of and direct the blasting of the rock in the quarry of Crusselle, and plaintiff was hired by Crusselle to work under said Gatewood, to obey his in-

structions and do whatever he should order about blasting. That the work is a dangerous one unless directed by a skillful man, one experienced in the business. Plaintiff was employed only as a striker, and knew nothing about blasting. That he consented to work under Gatewood only with the understanding that Gatewood knew his business. On the contrary, Gatewood was grossly ignorant of the business, and this incapacity was known to defendant, or would have been known to him had he taken ordinary care and diligence to inform himself ; but in disregard of his duty, defendant put Gatewood in charge of the work, and by reason of his unskillfulness and care- lessness, the blast of powder exploded prematurely and destroyed the eyesight of plaintiff, and this without fault or negligence on the part of plaintiff.

And plaintiff avers he would have brought his suit long ago against defendant for this damage and injury, but that defendant quieted him and induced him not to do so, by agreeing that he should have the title to the house and lot on Berry street, in the city of Atlanta, which plaintiff had been occupying since the purchase from Dill until he was illegally ejected in May, 1880, by defendant. The property is worth five hundred dollars, and from four to five dollars per month rent. Plaintiff alleges his age at the time of the damage at forty-four years, and that he has a wife and children dependent ; that he, defendant, had stated to divers persons he had given plaintiff the house as compensation for damages, etc. That defendant has ejected plaintiff and his family, poor and dependent, from the house. He therefore brings his suit, etc.

To this suit defendant pleaded the general issue and statute of limitations.

On the trial, the jury returned, under the evidence and charge of the court, a verdict in favor of the plaintiff for the sum of six hundred and twenty-five dollars ; whereupon the defendant made a motion for a new trial on the various grounds as set forth in the record, which was overruled by the court, and plaintiff excepted.

Crusselle *vs.* Pugh.

1. The first ground of error was in not non-suiting the plaintiff on the conclusion of his testimony, the defendant having filed a plea of the statute of limitations.

It is alleged, and such was the evidence, that this wrong was inflicted in April, 1871, and the suit not having been instituted until 1880, the defendant claimed that the suit was barred by lapse of time.

It is claimed by the plaintiff, in reply to the plea of the statute, that the defendant has been guilty of a fraud "by which the plaintiff has been debarred or deterred from his action ; and by reason thereof the limitation only commenced to run from the discovery of the fraud."

Fraud, in reply to the statute, being a question of fact for the jury, and there being facts and circumstances in the evidence affecting this failure to sue within the period of limitations which went to support this reply to the statute of limitations, we think the court did right to overrule this motion for a non-suit and to submit, as he did, to the jury the whole evidence, including the evidence of fraud, and leave it for them to say whether defendant had been guilty of such fraud as "debarred or deterred" plaintiff from bringing this suit within the two years as prescribed by the statute. So that neither in the refusal of the court to sustain the non-suit, nor in his charge to the jury in submitting the question of alleged fraud, in reply to the statute, do we find any error on the part of the court below.

2. The second ground of alleged error is in the court charging, " It is conceded by counsel for plaintiff that Mr. Pugh has been pecuniarily damaged to one-half of his capacity to labor." It is due to the court below to say, in making use of this language he was speaking of what had been severally acceded to by counsel on either side in the way of proof or admission. He said to the jury, to relieve them from calculations, "that by agreement of counsel on both sides, in one instance, and the concession of counsel for plaintiff, in the other, etc., that plaintiff's

expectation of life, according to the tables of mortality, based upon his age at the time of the accident, is twenty years; and it is conceded by counsel for plaintiff in the other that Pugh has been permanently damaged to one-half of his capacity to labor." We see no error against the defendant in this statement of the court to the jury. If plaintiff chose to concede his injury only extended to one-half his capacity to labor," it was an admission that did not bind defendant, and probably only operated to the disadvantage of plaintiff. Few men who are blind are to be found, we presume, who are half so efficient for labor as men who have their eyesight.

Neither do we find any error on the part of the court in charging the jury as set forth in the 3d, 4th, 5th, 6th, 7th, 8th and 9th, grounds of the motion, when taken in connection with the entire charge as set forth in the record.

3. The tenth alleged ground of error, was in the court charging the jury : " If they should believe, from the evidence, that when plaintiff originally went upon the work that he was in the employ of defendant, Crusselle, and that Pugh, at the time of the accident and up to the time of the accident, believed he was working still under Crusselle and had not been notified of Crusselle's sub-letting the quarry to Gatewood, then Crusselle would be liable to Pugh for the extent of the damage for the accident that happened to him (Pugh), provided you should believe that if it had been Gatewood solely, Gatewood would be liable ;" and in not charging the jury "if plaintiff did have notice of the change of masters, or by the exercise of ordinary diligence could have known it, defendant would not be liable at all for the alleged injury."

We recognize, of course, the doctrine contended for by counsel for defendant in error, and as expressed in the Code, that "the principal is not liable to one agent for injuries arising from the negligence or misconduct of other agents about the same business." Code, §2202 ; 1 *Kelly*, 198. In the case of *McDonald vs. The Eagle and*

*Phœnix Manufacturing Company*, decided at the present term, this court said, " The principal is liable for *his own* negligence or *misconduct*, and hence his liability rests on his own negligence or misconduct in the employment of his agents, and if he uses ordinary diligence in employing competent men, it is enough to relieve him. He is not liable for the negligence of a fellow-servant while engaged in the same employment, unless *he has been negligent* in the selection of that servant, or retained him after knowledge of his incompetency. Nor will the fact that the person proved incompetent, of itself and without more, show negligence of the master, but it must further appear that the master knew, or might have known, by ordinary diligence, the incompetency of the agent or servant. Law of Master and Servant, 333, 423–432 ; 2 Thomps., 969 ; Sherman and Red., 31 ; 1 Am. Rail., 536."

The gravamen of the complaint against the defendant as set forth in the writ is, that the defendant had employed Gatewood as a superintendent or agent, to do the work of blasting in this quarry ; that he was incompetent and unskilled in the work, and this fact was known to defendant, and by reason of this incompetency, unskillfulness and carelessness, the blast of powder was prematurely discharged, and plaintiff, who was working with him, was damaged, and by reason of the employment of this unskillful superintendent, defendant is liable.

There is no question that if the evidence submitted on the trial had supported this theory of the case, as set forth and alleged in the declaration, that the defendant would have been liable. He is liable as a common master for the injuries done by one employè to another employè if his (the master's) own negligence or want of ordinary care and diligence is the cause of the injury. For instance, as in the case cited of *McDonald vs. the Eagle and Phœnix Manufacturing Company*, a master would be liable for an injury to a servant occasioned by the fault of a fellow-servant, if he failed to employ competent men to do the

work in which the fellow-servant was injured, and which was caused by the want of skill in the servant causing the injury. The true test of liability is, was the master at fault or negligent, and did this fault or negligence of the common master lead to or result in damage to the servant by his fellow-servant ?

But while a master is responsible to third parties for injuries arising from the negligence of his servant, it is the prevailing doctrine that a party who has contracted for the doing of certain work for his use and benefit is not liable for the injuries arising in the performance of such work. The distinction is predicated upon the ground that the master has the control of his servant, and can remove him for misconduct, while a contractor as between him and his employer, is responsible only for the fulfillment of his agreement, and pending the performance is to a certain extent substituted for the party for whom the work is to be done. 2 Hilliard on Torts, 436; 5 Ohio, N. S. 38. One as master is liable as to third persons for the acts of his servant, for the servant represents the master, and his act is the act of the master; but the sub-contractor, and not the person with whom he contracts, is liable civilly for any wrong done by his servants in the execution of the work contracted for. The party employing has the selection of the party employed, and it is reasonable that he who has made choice of an unskillful or careless person to execute his orders should be responsible for any injury resulting from want of care or skill; but neither this principle nor rule can apply to a case where the party sought to be charged does not stand in the character of master to the party by whose negligent act the injury has been occasioned. If the defendant has no control over the men employed by the contractors or the contractors themselves, they could not dismiss them or direct their work. There usually cannot be more than one superior legally responsible. Hilliard on Torts, 442–3; 27 Conn., 274; 4 Exch., 255. Where it is sought to make a propri-

etor or owner responsible, between whom and the employè injured there are intermediate contractors or sub-lessees, the principle is fairly stated and rule thus laid down in a case in 33 Am. Rep., 426: "The main question in such cases is, whether any duty remained which sprang from the proprietor's own position and from the violation of which by the proprietor the damage arose."

Take the case at bar, and conceding the fact that Pugh was the servant of the defendant at the time of the injury, yet to make the defendant liable it must be shown, as alleged in the writ, that Gatewood was likewise the servant of the defendant, and that it was the carelessness or negligence of the defendant in employing Gatewood, alleged to be unskillful and incompetent, and whose unskillfulness was the cause of the damage, before he would be responsible as the common master of the two. But in this case the evidence shows, without any conflict, that Gatewood (whose want of skill and experience it is alleged produced this disaster to the plaintiff below) was not at the time the servant or employè of the defendant, Crusselle. The written contract between them in evidence, as construed, (and we think properly construed by the court) establishes the fact that Gatewood took charge of this quarry to work it, not as the superintendent, agent or employè of Crusselle, but as a lessee under him. And therefore the legal question made by the evidence, and which should have been ruled by the court was, whether a lessor is liable for the want of skill, carelessness or neglect of his lessee to an employè either of the lessee or of the lessor.

Hilliard lays down the rule broadly, "that a lessor is not liable either as partner, principal or master, for the torts of the lessee or his servants." 2 Hilliard on Torts, 587, (3d Ed.)

In the case of Norton *vs.* Wiswall, 26 Barb., 618, this question seems to have been elaborately examined and discussed in a case in which it was sought to make the

proprietor of á ferry responsible for the wrongful act of the servant of a lessee of the ferry. In that case the court says: "Where one is the master or principal of another, he is responsible for his acts within the scope of his employment, because he has conferred authority upon the latter to do the act, and because he has the power and the legal right to control his conduct; where one is the partner of another he is liable for his acts within the scope of the partnership, because he has agreed to be so, and because the very nature and object of this relation imply that each acts with the authority and assent of the other. But where the parties stand toward each other simply in the light of contracting parties, having no relation toward each other which draws into operation the principle of agency, the rule does not apply. Such is the condition of lessor and lessee. The lessee for the time being takes the place and assumes the duties of the lessor. He is a substitute for the lessor; he acts independently of him. He has an agreement under which in consideration of a stipulated compensation he is for the time being clothed with the rights and responsibilities of the lessor. He has the rights of owner. The lessor cannot, without his consent, set foot upon the premises during the lease. The terms of the lease displace the lessor, he cannot control it, nor give directions concerning it. To attempt to control or direct it makes him a usurper, a trespasser. How then can he be liable for the acts of the lessee? The servants of the lessee are not his servants. They owe no allegiance or service to him, and thus having no power over them, he is not responsible for their acts. He stands in no relation to them which makes applicable to him the maxim "*respondant superior*." Apply these principles to the case at bar under the evidence, and it appears that Gatewood was seeking employment of Crusselle, the defendant; that they entered into a contract of lease, in which Crusselle sub-let the quarry he was then having worked on his own account to Gatewood, on terms stipu-

lated in the writing; that on a certain day, and several days before this accident, Gatewood entered on the quarry under his lease, retaining some of the hands originally working for Crusselle and discharging others; that among those hands retained were Anthony Mell, the blaster, and Pugh, the striker; that under Gatewood these hands were working together for about a week, when Gatewood, for some cause, discharged Mell, the blaster, on Monday before the accident on Wednesday, and undertook himself the duties of blaster, or loading, when, it is alleged, from his want of skill or inexperience, the blast prematurely exploded, and plaintiff was injured.

These being the facts established, under what rule of law can Crusselle, the lessor, be held liable for the fault of Gatewood, the lessee, to one working in the quarry leased by Gatewood? What right did Crusselle have to enter upon the premises leased to Gatewood, or control or direct his servants, or even to direct or control Gatewood, the lessee? The rule is, as before stated, "The principal is not liable to one agent for injuries arising from the negligence or misconduct of other agents about the same business." But he may be made liable if by his negligence in employing an agent, he secures one unfit for the work, and this want of skill leads to the injury of a co-employé. But in this case Gatewood was not employed as a servant of Crusselle at all: he leased from him the quarry, and the relation of lessor and lessee existed, not that of master and servant.

In view of these facts, we must hold that the rule of liability which the court gave in charge to the jury, and excepted to in the tenth ground of the motion, was error. To charge that because Pugh went to work originally under Crusselle, and up to and at the time of the accident he believed he was working still under Crusselle, and had no notice of the sub-letting of the quarry to Gatewood, then Crusselle would be liable, if Gatewood was liable, for the injury, we think was error under the rules of law we have sought to lay down in this opinion.

We have examined with care the authorities cited by counsel for defendant in error, and in the case cited in 33 Am. Reports. 423, and specially relied upon, we find nothing in conflict with the views here expressed. In that case the mining company, a corporation, was held liable for damages to an employè of certain sub-contractors engaged in working the mine; but the court put it expressly upon the ground that in the contract the company (who were the owners) made with the sub-contractors the former assumed the duty of making arrangements to protect the workmen; and the injury complained of resulted to the employè from the falling in of a portion of the mine which the company had failed to keep secure, as they had contracted to do. Here was a direct violation of the principle heretofore quoted: " Whenever any duty remained which sprang from the proprietor's own position, and from the violation of which the damage arose," then the proprietor would be liable.

Let the judment of the court below be reversed on the ground that the court erred in charging the jury as is set forth in the tenth ground of the motion for new trial.

Judgment reversed.