Hillsborough, } No. 3448.
Dec. 7, 1943. }

OCEAN ACCIDENT & GUARANTEE CORPORATION, LTD.

*v.*

STEPHEN CONNELL & a.

78

*Thorp & Branch* (*Mr. Branch* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Louis E. Wyman* orally), for the defendant Connell.

*Devine & Tobin* for the defendant oil company, furnished no brief.

PAGE, J. The exceptions to the rulings on the framing of an issue and on the admission of evidence appear to have been waived. The other exceptions may be considered together.

It is not disputed that in January, 1941, the State Oil Company, by its authorized agent, Clarence A. Bennett, employed Connell to work for the company at a filling and service station owned and operated by the company in Manchester; that Bennett was in charge of the station as employee of the company; that Connell continued to work at the station until he was injured while in the

performance of his duties on October 27, 1941. Nor is it further disputed that on or about September 27, 1941, the company and Bennett agreed that thereafter the station should be operated by Bennett on his own account and not on salary as previously.

The principal stockholder and manager of the oil company admitted that he never notified Connell of the change, that after the change company equipment formerly used at the station (including a truck) was left there for Bennett's use, that Bennett was charged no rent for the station or equipment, that instead of a salary Bennett was allowed the net profits on the difference between wholesale and retail prices and the whole of the servicing business, while the company had whatever wholesale profit there might be.

It is not disputed that both before and after the change, the sign on the building was "Bennett Battery Service" and the telephone listed in that style; that prior to the change charge slips were sometimes on forms of Bennett's, sometimes on those of the oil company, and that after the change they were made solely on company slips. Prior to the change, all employees went to the oil company office to draw their weekly pay. After the change, they got it from the cash register at the station. This was all the evidence of facts relating to business customs brought to Connell's attention. He was never told by anybody, as far as appears, about the new arrangement between the oil company and Bennett. Except as to what might be indicated by changed operative customs and what Bennett told him, he knew nothing.

Connell was told by Bennett that a change was to be made, but the only changes talked about were (1) that pay was to be taken from the cash register, and (2) all charges were to go on oil company slips. The former was consistent with a finding that the company was still employing Bennett and Connell, while the latter point could not suggest that such employment had ceased. Nor did the continuance of a sign and telephone listing, used while the employment existed, necessarily suggest a change to employment by Bennett as master. The statement by Bennett, when the change was made, that they would have to work harder might not seem significant in view of Connell's statement, if believed, that Bennett frequently said the same thing when the oil company was in control.

The plaintiff excepted to the following charge: "An employee is entitled to select his employer, the same as an employer is entitled to select his employee. An employee is also entitled to know who he is working for, and when a change is made and one employer is

substituted for another, the employee is entitled to notice of that change. So as a preliminary question . . . : 'Did Mr. Connell know, or by the exercise of reasonable care or due care should he have known that his employer had been changed from the State Oil Company to Mr. Bennett?' If Mr. Connell did not know, either by being told or by the exercise of reasonable care on his part that the oil company through Mr. Scott and Mr. Bennett had arranged that his employment with the oil company had ceased, then he had a right to assume that he was still working for the oil company." If the answer to the preliminary question was "yes," the jury were told to answer the framed issue in the negative. If the contrary were found, the framed issue was to be answered in the affirmative.

The plaintiff excepted to the denial of requests for instructions that the principal test was whether or not the oil company had the right to control Connell in the performance of his work; that if the company, by virtue of its new agreement with Bennett no longer had that right, Connell was not in the company's employ; that Connell's belief about the matter was immaterial; that the fact that Connell went off the company payroll was evidence; that the employment was terminable at pleasure by either party without notice to the other.

The instructions given were as favorable to the company as was possible in the circumstances. "In an action by a servant [for personal injuries] . . . , the obviously reasonable and just doctrine is that, if he was allowed, without any notice of a change of masters, to continue doing the same work as that for which he was first engaged, and on premises which ostensibly remained in the possession of his original employer up to the time of the accident, he should be entitled to hold that employer liable. Knowledge of the circumstances being an essential element of that consent without which there can be no contract, it is difficult to see upon what ground a different doctrine can be based." 1 Labatt, Master and Servant (2d ed.), s. 31.

The author just quoted recognizes, as cases holding the contrary, *Crusselle* v. *Pugh*, 67 Ga. 430, and *Smith* v. *Belshaw*, 89 Cal. 427. As far as counsel have cited cases in point or as search has disclosed, these are the only cases so holding.

In support of Labatt's view, it has been held that there may be recovery for personal injuries, after a change in employment effective as between the original employer and the managing employee in Bennett's position, provided the injured employee had no notice of the change or was not put as a reasonable man on inquiry. *Beauregard* v. *Company*, 213 Mass. 259; *Solomon &c. Company* v. *Jones*,

30 Kan. 601 (opinion by *Brewer*, J.); *Gulf &c. Company* v. *Shearer*, 1 Tex. Civ. App. 343; *Missouri &c. Company* v. *Ferch*, 18 Tex. Civ. App. 46; *Hall* v. *Trimble*, 104 Md. 317; *Goodwin* v. *Smith*, 66 S. W. 179 (Kentucky Court of Appeals). Compare also *Berry* v. *Railroad*, 202 Mass. 197; *Anderson* v. *Polleys*, 53 R. I. 182, and *Donnelly* v. *Company*, 117 Cal. 417, for similarity of reasoning. On a like theory, such an employee may recover from the original employer for services performed after the change. *Perry* v. *Company*, 37 Conn. 520; *Marietta &c. Railroad* v. *Hilburn*, 75 Ga. 379. This line of cases recognizes that as between such parties as the oil company and Bennett the change is factually and legally effective, but the right of control of other employees is not the principal test of the continuing relationship of master and servant. The relationship continues for legal purposes, as between persons situated as were the oil company and Connell, because the contract has never been terminated. Connell did not throw up his employment or refuse to perform his duties, which would perhaps have been sufficient notice of abandonment of the contract of employment by him. The company apparently intended to terminate the contract, but gave no actual notice of its intention to Connell. Whether or not he ought to have known of the change from other sources was properly left to the jury, and has been decided in his favor on sufficient evidence. It follows that the motion for a directed verdict was properly denied.

*Exceptions overruled.*

BRANCH and JOHNSTON, JJ., did not sit: the others concurred.